**No. 55525.**—James H. Rhodes & Co. *v.* United States, protest 152862–K (New York).

MOLLISON, Judge: The merchandise the subject of this protest consists of 7,914 bags of unmanufactured pumice stone which was imported from Italy. It was invoiced at a unit price of US $7.50 per 1,000 kilograms, which is extended on the invoice to a total of $3,187.50. The weight shown on the invoice is 425,000 kilos.

A notation in indelible pencil appears on the invoice "1/10¢/206," evidently placed there by the entrant, in accordance with the provisions of section 8.21(*b*), of the Customs Regulations of 1943, indicating a claimed classification under paragraph 206 of the Tariff Act of 1930 at one-tenth of 1 cent per pound. The said paragraph, so far as pertinent, reads as follows:

PAR. 206. Pumice stone, unmanufactured, valued at $15 or less per ton, one-tenth of 1 cent per pound; valued at more than $15 per ton, one-fourth of 1 cent per pound; * * *

Attached to the invoice is a slip of paper which indicates that the importer added to the invoice value on entry the sum of $3,187.50 "for value of bags not included," and the total entered value shown on the entry for the item in question is $6,375, which is obviously the result of adding together the invoice value and the amount added on entry.

The entry describes the merchandise involved as "Crude pumice not over $15.00 T" with a Schedule A (Department of Commerce) commodity number of

5463.000 and a gross weight and a net quantity of 936,955 pounds, and the tariff paragraph and rate are shown thereon as "206" and "1/10¢," respectively. There can be no question, therefore, that the merchandise was entered as being classifiable under the first provision of paragraph 206, *supra.*

On the summary sheet (customs Form No. 6417) attached to the entry there is a red-ink check mark in the column headed by the word "Appraised," and in the column headed "Advisory Classification" there is a red-ink notation "Sec. 16.2 (b) C. M." The effect of a check mark is stated in a printed explanatory note on the same sheet as follows:

A check mark (✓) in the appropriate column below indicates that—(a) the appraised value agrees with the entered value as represented by the information set forth on the invoice and in any importer's notations endorsed thereon or attached thereto; (b) the advisory classification agrees with that indicated by the importer on the invoice(s); * * *

It is clear, therefore, that the appraised value agreed with the entered value. Since there was no check mark in the column headed "Advisory Classification," it would appear that the advisory classification of the appraiser did not agree with that indicated by the importer on the invoice, and the notation "Sec. 16.2 (b) C. M." is obviously a reference to section 16.2 (b) of the Customs Manual. That section is under part 16 of the said Customs Manual, relating to "Liquidation of Duty," and reads as follows:

(b) The collector shall determine whether the advisory classification by the appraiser is correct, and if it is not he shall so inform that officer. When the merchandise is advisorily classified by the appraiser under a paragraph prescribing rates which vary according to value, size, or other characteristics, it shall be the duty of the collector to determine whether the advisory classification is correct and to calculate and determine which rate of duty applies to each item.

Upon liquidation of the entry, the collector determined (presumably from the appraiser's return of value) that the merchandise was valued at more than $15 per ton, and accordingly classified it under the second provision in paragraph 206, *supra,* and assessed duty at the rate of one-fourth of 1 cent per pound accordingly.

The present protest was filed against this action, and the claim recited therein is as follows:

Said merchandise is not dutiable as assessed. It is properly dutiable at only 1/10¢ lb. under Par. 206. It is valued at not more than $15 per ton. The total appraised value should have been divided by the gross weight in order to arrive at the appraised value per ton.

By timely amendment of the protest, the following claims were added:

* * * that if the value exceeds $15 per ton, then the liquidation is premature and void in that no notice of appraisement was given to the importer and the appraised value is higher than the entered value or that there was a change in the classification of the merchandise resulting from the appraiser's determination of value.

The case was submitted for decision "on the official papers," which we take to mean that the case has been submitted for decision upon a record which includes all of the papers accompanying the protest transmitted to the court by the collector.

It will be noted that the claim made by amendment of the protest raises the question of the validity of the liquidation. Our decision in respect thereto will make unnecessary any consideration of the correct classification of the merchandise at this time.

By amendment of the protest, it is claimed that the liquidation is premature and void in that no notice of appraisement was given to the importer although

(1) the appraised value was higher than the entered value, or (2) there was a change in the classification of the merchandise resulting from the appraiser's determination of value. We need consider only the second of the two grounds stated.

Section 501 (a) of the Tariff Act of 1930, as amended, under the heading "Notice of Appraisement—Reappraisement," provides as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value.

While there is no direct proof in the record that no notice of appraisement was given in connection with the merchandise involved, there is nothing in the papers which would indicate that such a notice had been given, and it is the defendant's position, as expressed in the brief filed in its behalf, that there was no occasion for the giving of such notice. We take it to be undisputed, therefore, that no notice of appraisement was given by the collector.

The foregoing provision of section 501 requires that a written notice of appraisement shall be given "if * * * a change in the classification of the merchandise results from the appraiser's determination of value." The classification referred to above which may be changed under the conditions outlined can only be that which was claimed by the importer on entry, which in this case, as shown by the description "Crude pumice not over $15.00 T" and the Department of Commerce Schedule A number, 5463.000, was that contained in the first provision of paragraph 206, viz, "Pumice stone, unmanufactured, valued at $15 or less per ton." For translation of the Department of Commerce Schedule A number, see the publication entitled "Schedule A—Statistical Classification of Imports into the United States" edition of September 1, 1946, published by the United States Department of Commerce, Bureau of the Census, under the authority of section 484 (e) of the Tariff Act of 1930.

Commodity No. 5463000 is therein described as:

> Pumice stone and manufactures:
> Crude or unmanufactured:
> Valued $15 or less per ton.

By virtue of the provisions of section 484 (d) of the same act, and section 8.8 (a) of the Customs Regulations of 1943, prescribed under the authority of said section 484 (d) of the tariff act, importers are required on entry to "indicate clearly the tariff classification claimed by the importer."

Furthermore, it will be noted that the entry containing the foregoing claimed classification and the estimated duties called for thereby were accepted by the collector.

Under these circumstances, when the determination of value made by the appraiser caused the collector (who is the classifying officer) to adopt a classification different from that claimed on entry by the importer, the conditions of section 501 requiring the giving of notice were fulfilled, and such notice should have been given. Since it was not, it follows that the appraisement was incomplete and did not become final and conclusive upon the parties (*United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561), and liquidation had thereon was consequently void.

Under the applicable authorities, the appraisement, or purported appraisement, itself is illegal and void. In *Peabody & Co.* v. *United States*, 12 Ct. Cust. Appls. 354, T. D. 40491, the precise question was raised with respect to section 501 of the Tariff Act of 1922, substantially reenacted as section 501 of the present act, and the court said, *inter alia*:

Section 501, *supra*, provides for a written notice of appraisement to be delivered to, or mailed to, the consignee or his agent.

If the statute is not complied with in regard to notice of appraisement, could it be said that there had been a legal appraisement, one that could become final and conclusive against the consignee or his agent? We think not.

The statutory provision for notice to the consignee, or his agent, is mandatory, and compliance therewith is essential to the legality of the appraisement.—The Lace House *v.* United States (141 Fed. 869; T. D. 26970).

*      *      *      *      *      *      *

It is true that the actual decision of the appraiser was made when he filed his report with the collector. It was an appraisement in fact, but the statute requires something more than the actual appraisal of the merchandise and the filing of a report thereof with the collector. Notice in writing thereof must be delivered to or mailed to the consignee, or his agent, before such appraisement becomes a legal appraisement.

The appraisement which was made November 22, 1948, being void, and we so declare, the provisions of section 2636 (d) of title 28, United States Code (the Judiciary and Judicial Procedure Act of 1948), reading as follows:

If upon the hearing of a protest, the court declares an appraisement of merchandise made after the effective date of the Customs Administrative Act of 1938 to have been invalid or void, it shall remand the matter to a single judge who shall determine the proper dutiable value of such merchandise in the manner provided by this chapter. In such proceeding no presumption of correctness shall attach to the invoice or entered values.

become applicable to the situation.

Judgment will therefore issue remanding the matter to a single judge of this court for the determination of value provided by law.